**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

OSKAR VILLARBERG,
Plaintiff,
v.
DANNY JONES et al.,
Defendants.

Case No.: 26-cv-00703-DMS-DDL

**ORDER**
**(1) GRANTING PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*;**
**(2) SCREENING COMPLAINT; AND**
**(3) DENYING MOTION TO APPOINT COUNSEL**

On February 4, 2026, Plaintiff Oskar Villarberg, proceeding *pro se*, filed this action against Defendants Danny Jones and The Golden West Hotel. (Compl., ECF No. 1 at 1). Plaintiff's first filing consists of a form complaint, a typed narrative, and photographic exhibits, which the Court liberally construes as the operative Complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (citation modified)). Plaintiff's claims arise from his eight-month tenancy at The Golden West Hotel and the return of his security deposit. (Compl. 5–12). Plaintiff concurrently filed a Motion to Appoint Counsel and a Motion to Proceed *In Forma Pauperis* ("*IFP* Motion"). (Counsel Mot., ECF No. 2; *IFP* Mot., ECF No. 3). For the following reasons, the Court grants Plaintiff's *IFP* Motion, *sua sponte* dismisses the Complaint with leave to amend, and denies the Motion to Appoint Counsel.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

Parties instituting a civil action in a United States district court must pay a filing fee of $405. 28 U.S.C. § 1914(a)–(b).[1] However, a court may authorize a party to proceed *in forma pauperis* ("*IFP*") without the prepayment of fees if the party submits an affidavit demonstrating their inability to pay. § 1915(a)(1); *see* CivLR 3.2(a) (listing specific requirements for the affidavit). Although a party need not be "absolutely destitute" to proceed *IFP*, they must "allege poverty with some particularity, definiteness and certainty" such that they could not "pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citation modified).

Plaintiff's *IFP* Motion consists of an Application to Proceed in District Court Without Prepaying Fees or Costs (Form AO 239). (*IFP* Mot. 1). Plaintiff reports that he has worked at a grocery store since September 2024 with gross monthly pay of $773 and $24 per month in public assistance. (*Id.* at 2). Plaintiff states that he has $100 in a checking account and $1 in a savings account, but no other assets. (*Id.* at 2–3). Plaintiff itemizes monthly expenses totaling $2,041 and states that he has recently incurred significant moving expenses. (*Id.* at 4–5). The Court finds that Plaintiff has sufficiently demonstrated that he cannot "pay the court costs and still afford the necessities of life." *Escobedo*, 787 F.3d at 1234. Accordingly, the Court grants Plaintiff's *IFP* Motion.

## II. *SUA SPONTE* SCREENING

### A. Background

In 2025, Plaintiff rented Room 206 at The Golden West Hotel ("the Hotel") for eight months. (Compl. 6, 10). Plaintiff alleges various issues with the housing, including that the tenants were permitted to loiter, play loud music, and sell drugs at all hours outside of the building's entrance. (*Id.* at 5). Plaintiff alleges that this created a dangerous

---

[1] The $405 fee consists of a $350 filing fee mandated by § 1914(a) and a $55 administrative fee prescribed by the Judicial Conference of the United States pursuant to § 1914(b). *See* Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023). However, the filing fee for an application for a writ of habeas corpus is $5. § 1914(a).

environment that led to a tenant being murdered and that he himself was "accosted by the drug dealers more than once," forcing him to use the side entrance which was also dangerous. (*Id.*). Plaintiff alleges that "tenants were allowed to smoke and drink drugs and cigarettes less than the required 20 feet from the entrance." (*Id.*). According to Plaintiff, smoking and drug use continued inside the hallways and bathrooms, leading to secondhand smoke exposure. (*Id.*). Plaintiff alleges that the lease stated it was a non-smoking building and that management was aware of the secondhand smoke issue but did not take action or put up any signs. (*Id.*).

Plaintiff alleges that the building was infested with bedbugs, cockroaches, and gnats, although this was concealed from prospective residents. (*Id.* at 6). Plaintiff alleges that the bedbug issue was so severe that at various points he covered the floor in diatomaceous earth, shaved his head, and checked himself into a hospital. (*Id.*). Plaintiff further alleges that the gaps in the front and side doors allowed in cockroaches. (*Id.* at 7). According to Plaintiff, there was a gnat infestation stemming from a second-floor bathroom which had a large pool of standing water that Plaintiff had to avoid when he stood or showered. (*Id.*). When Plaintiff brought these issues up to management, they assured him that pest treatment twice during his tenancy was sufficient. (*Id.*). Plaintiff alleges that the smell from the treatment spray was so intense that he could not enter his room for twenty-four hours. (*Id.* at 6). After seeing pests crawl under his door, Plaintiff allegedly requested a door seal which was present on some of the other rooms. (*Id.*). Plaintiff alleges that this request was ignored and that he had to purchase his own makeshift door seal from a hardware store. (*Id.*).

Plaintiff further alleges other unsanitary or unsafe living conditions such as unclean bathrooms, mold, mildew, broken furniture, a broken elevator, and broken heaters. (*Id.* at 8). Plaintiff alleges he was harassed by an employee of the management company when he touched a vintage telephone switchboard in the lobby. (*Id.* at 9). Plaintiff alleges that the Hotel's owners and management would put personal notes and food in the mailboxes, which Plaintiff characterizes as mail tampering. (*Id.*).

After moving out, Plaintiff allegedly requested his security deposit back on December 3, 2025. (*Id.* at 10). Plaintiff states that he requested to get it "back from the Appfolio site where [his] on-line monthly rent payments were made through" and that he requested it be sent to his new residence on Broadway. (*Id.*). On December 18, 2025, Plaintiff allegedly emailed the Hotel about the check and submitted a grievance about his time living there. (*Id.*). The next day, Plaintiff allegedly emailed the Hotel again upon the realization that he wanted a full refund of $5,320.50. (*Id.*). On December 23, 2025, Plaintiff allegedly received an email from Danny Jones, stating that Danny had "prepared and sent the deposit refund via eCheck" which would either be mailed to Plaintiff's new address on Broadway or sent directly to Plaintiff's banking institution. (*Id.*). On December 23, 2025, Plaintiff allegedly received an email from the management company, stating that the security deposit refund of $650 had been initiated and providing a confirmation number. (*Id.*). Plaintiff inquired again and on January 2, 2026, he allegedly received another email stating that the refund was initiated. (*Id.*). On January 7, 2026, Plaintiff allegedly received an email from Danny Jones asking "Has the check arrived?" (*Id.* at 11). Plaintiff alleges that after posting his frustration with the Hotel on social media, he received another email from the management company stating that the refund was initiated. (*Id.* at 11). On January 27, 2026, Plaintiff allegedly emailed Danny Jones and pointed out that each of the emails had a different confirmation number for the initiated checks. (*Id.*). On January 28, 2026, Danny Jones allegedly replied and said that a physical check was issued. (*Id.*). That same day, Danny Jones allegedly emailed Plaintiff to explain that the "banking information was entered incorrectly or the account is inactive," and that it would be the same banking information provided by Plaintiff upon move-out. (*Id.*). On January 30, 2026, Plaintiff picked up his security deposit refund check from the front desk of the Hotel. (*Id.* at 12).

On February 4, 2026, Plaintiff filed this action. (Compl. 1). Although the Complaint mentions harassment, mail tampering, and banking fraud, it is unclear which causes of action Plaintiff is asserting. (*Id.* at 9–10). Further, the civil cover sheet identifies 24 C.F.R.

§ 203.673 as the cause of action, states "Bug Infestation – Building Not Fit to Be for Human Habitation," and demands $5 million. (ECF No. 1-1 at 1).

**B. Legal Standard**

Under 28 U.S.C. § 1915(e)(2), the Court must screen an *IFP* complaint and dismiss the case if, at any time, it determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (confirming § 1915(e)(2)(B) applies to non-prisoners as well). A complaint "is frivolous where it lacks an arguable basis either in law or in fact" and malicious where "it was filed with the intention or desire to harm another." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citation modified). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, dismissal is warranted when the plaintiff seeks monetary relief against an immune defendant, as long as the court "has sufficient information to make a determination on immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1167 (9th Cir. 2016).

**C. Discussion**

The Court now examines the Complaint to determine whether it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief

against a defendant with immunity from such relief. In doing so, the Court is mindful of its obligation to ensure it has subject-matter jurisdiction over this action. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (finding that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party").

Even liberally construed, the Complaint fails to state a claim upon which relief may be granted. *Erickson*, 551 U.S. at 94. Although a plaintiff "does not need to plead specific legal theories," the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Elec. Constr. & Maint. Co. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985); Fed. R. Civ. P. 8(a); *Deuschel v. Cal. Health & Hum. Servs. Agency*, No. 24-3129, 2025 WL 1625535, at *1 (9th Cir. June 9, 2025) (finding a complaint may be properly dismissed under § 1915(e)(2) for failing to comply with Rule 8). Here, the Complaint makes many factual allegations but does not tie those allegations to specific causes of action. *Gibson v. City of Portland*, 165 F.4th 1265, 1290 (9th Cir. 2026) ("[P]ermitting parties to file pleadings that do not tie factual averments against specific parties to individual causes of action infringes Rule 8."). As such, the Complaint does not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," as required by Rule 8. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (citation modified). Furthermore, even liberally construing the Complaint as bringing a claim under section 203.673, that regulation governs the habitability of properties acquired by the U.S. Department of Housing and Urban Development, and does not create a private right of action. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."). It is unclear whether the Complaint's mentions of harassment, mail tampering, and banking fraud are intended to raise causes of action. (Compl. 9–10). Furthermore, without a federal cause of action it is doubtful that the Court has subject-matter jurisdiction over

any state-law claims alleged.[2] A court "should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation modified); Fed. R. Civ. P. 15(a) (courts should "freely give leave [to amend] when justice so requires"). Here, it is not absolutely clear that Plaintiff's claims could not be cured by amendment. Accordingly, the Complaint is dismissed with leave to amend.

## III. MOTION TO APPOINT COUNSEL

Plaintiff has filed a form Motion to Appoint Counsel, citing his unsuccessful efforts to retain counsel and inability to pay for an attorney. (Counsel Mot. 1–3). There is no constitutional right to appointment of counsel in a civil case, unless an indigent litigant's physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs. of Durham Cnty.*, 452 U.S. 18, 25 (1981). "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). "When determining whether exceptional circumstances exist, a court must consider the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* (citation modified). Here, neither consideration supports appointment at this time. Plaintiff's Complaint has been dismissed with leave to amend and thus a likelihood of success on the merits cannot presently be assessed. Furthermore, Plaintiff's Complaint does not evidence an inability to articulate claims on the legal issues involved. For those reasons, Plaintiff's Motion to Appoint Counsel is denied without prejudice.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **GRANTS** Plaintiff's *IFP* Motion, *sua sponte* **DISMISSES** the Complaint, and **DENIES** Plaintiff's Motion to Appoint Counsel without

[2] "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified). Federal courts have original jurisdiction where there is a federal question or where there is diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

prejudice. Within twenty-one (21) days of the date of this Order, Plaintiff may file an amended complaint. In any such amended complaint, Plaintiff must clearly identify what causes of action are being asserted and against which Defendants.

**IT IS SO ORDERED.**

Dated: August 17, 2026

Hon. Dana M. Sabraw
United States District Judge